JEFFREY D. WOHL (Cal. State Bar No. 096838)
RYAN D. DERRY (Cal. State Bar No. 244337)
ANNA M. SKAGGS (Cal. State Bar No. 319179)
JEFFREY G. BRIGGS (Cal. State Bar No. 323790)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
jeffwohl@paulhastings.com
ryanderry@paulhastings.com
annaskaggs@paulhastings.com
jeffreybriggs@paulhastings.com

Attorneys for Defendant
Target Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSEPH D. ORNELAS and RODNEY ALAN ROBINSON, JR., on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

TARGET CORPORATION, a Minnesota corporation, and DOES 1 through 100, inclusive,

Defendants.

No. 5:19-cv-01814-JVS-SP

**REPLY IN SUPPORT OF DEFENDANT TARGET CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

Date: April 20, 2020
Time: 1:30 p.m.
Courtroom: 10C, 411 W. Fourth St., 10th Flr., Santa Ana
Judge: Hon. James V. Selna

Complaint filed: August 19, 2019
Trial date: April 13, 2021

# TABLE OF CONTENTS

*Page*


Table of Authorities ..... ii

I. INTRODUCTION/SUMMARY OF ARGUMENT ..... 1

II. TARGET'S 2007 AWSS WERE VALIDLY ADOPTED ..... 4

- A. Target's AWS Disclosures Complied with, and in Some Aspects Far Exceeded, What the Law Requires ..... 4
  - 1. The Disclosures Correctly Recited the Two-Thirds Approval Requirement ..... 4
  - 2. The Disclosures Correctly Described the Consequences of Adopting the Proposed AWSs ..... 5
  - 3. Target Properly Translated Its Disclosures in Spanish ..... 7
- B. Absentee Ballots Are Lawful and Necessary to Ensure All Members of the Affected Work Units Have the Opportunity to Vote ..... 7
- C. The Appropriate Team Members Voted in the AWS Election ..... 9
- D. Target's Menu of Schedule Options Complied with California Law ..... 9
- E. The Propriety of Target's 2007 AWSs Does Not Rely on the 1993 and 2001 Elections ..... 11

III. PLAINTIFFS MAKE AN UNFOUNDED CONTENTION THAT AFTER ADOPTION, THE 2007 AWSS WERE DISREGARDED ..... 12

IV. PLAINTIFFS HAVE ABANDONED THEIR WORKDAY/WORKWEEK THEORY FOR UNPAID OVERTIME ..... 14

V. PLAINTIFFS' DERIVATIVE CLAIMS ALSO SHOULD BE DISMISSED ..... 15

VI. PLAINTIFFS' COUNTER-REQUEST FOR SUMMARY JUDGMENT IS PROCEDURALLY IMPROPER, AND IT IS UNFOUNDED BECAUSE PLAINTIFFS HAVE NOT ESTABLISHED THE UNDERLYING FACTS AS UNDISPUTED ..... 15

VII. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

Page

**Cases**

*James v. Dependency Legal Grp.*,
253 F. Supp. 3d 1077 (S.D. Cal. 2015) .......... 13

*Loughrie v. Target Corp.*,
(U.S.D.C., C.D. Cal., No. 5:17-cv-02342 JVS (SPx),
and San Bernardino Superior Court No. CIVDS1804580) .......... 1

*Ludlow v. Corr. Training Facility Med. Dep't*,
No. 16-CV-03974-HSG, 2018 WL 4210281 (N.D. Cal. Sept. 4, 2018) .......... 14

*Maldonado v. Epsilon Plastics, Inc.*,
22 Cal. App. 5th 1308 (2018) .......... *passim*

*Martin v. Rubalcava*,
No. 2:12-CV-2232-EFB P,
2014 WL 794342 (E.D. Cal. Feb. 27, 2014) .......... 13

*Molina v. Dollar Tree Stores, Inc.*,
No. CV 12-1428-BRO, 2014 WL 2048171 (C.D. Cal. May 19, 2014) .......... 15

*Nelson v. Pima Community College*,
83 F.3d 1075 (9th Cir. 1996) .......... 7, 14

*Plaisted v. Dress Barn, Inc.*,
No. 2:12-CV-01679-ODW, 2013 WL 300913 (C.D. Cal. Jan. 25, 2013) .......... 15

*Richards v. Neilsen Freight Lines*,
810 F.2d 898 (9th Cir. 1987) .......... 15

**Statutes, Rules and Regulations**

Cal. Lab. Code
§ 511 .......... *passim*
§ 511(a) .......... 4, 9
§ 511(b) .......... 13

California Labor Code Private Attorneys General Act ("PAGA") .......... 3, 15

Fed. R. Civ. P.
R. 56 .......... 15
R. 56(f)(1) .......... 3, 15

IWC Wage Order
7-2001 .......... *passim*
16-2001 .......... 8

U.S.D.C., C.D. Cal., L.R. Rule 7-3 .......... 3, 15

## I. INTRODUCTION/SUMMARY OF ARGUMENT

Under California law, no overtime is due for the ninth and tenth hours worked in a day under a validly adopted AWS. Cal. Lab. Code § 511. Here, Target complied with—and often exceeded—the requirements for implementing the 2007 AWSs that plaintiffs worked during the five-month period (March 21 to August 10, 2019) at issue in this action.[1] In fact, in opposition, plaintiffs do not challenge, let alone address, the majority of procedures Target followed for its 2007 AWS elections, including:

- providing written disclosures to affected team members (in English and Spanish) (ECF 47 at 25);
- holding informational meetings to discuss the AWS proposals at least 14 days before the elections (ECF 47 at 26);
- holding secret-ballot elections in which at least two-thirds of the team members voted in favor of the proposals (ECF 47 at 29-30);
- reporting the results of the AWS elections to the DIR within 30 days after each election (ECF 47 at 30);
- implementing the proposed AWS only after 30 days had passed since the election results were announced (ECF 47 at 30); and
- paying overtime to team members consistent with the AWSs they voted to adopt (ECF 47 at 51).

For the few procedures that plaintiffs do address, they do not focus on substance; instead, they talk about what they wish the law would say, or what they hope the facts would show. Altogether, plaintiffs offer five unfounded arguments against Target's motion for summary judgment, four based on challenges to the procedures that Target

[1] Plaintiffs do not sue with respect to any earlier period because their claims are barred by the class settlement in *Loughrie v. Target Corp.*(U.S.D.C., C.D. Cal., No. 5:17-cv-02342 JVS (SPx), and San Bernardino Superior Court No. CIVDS1804580). To the extent that plaintiffs represent or imply to the Court that there was a finding in *Loughrie* that Target's AWSs were not compliant with the law, that is flatly untrue—the case was settled on a no-admission basis. (Supplemental Declaration of Ryan Derry in Support of Defendant Target Corporation's Reply in Support of Motion for Summary Judgment, ¶ 2, Exh. C).

followed in the 2007 AWS elections and the fifth based on what allegedly happened after the AWSs were adopted:

1. Plaintiffs contend that Target's pre-election disclosures were deficient because, they allege, the disclosures (i) improperly stated that the proposed AWS would be adopted if, of those who voted, two-thirds voted in favor of it, instead of a positive vote by two-thirds of the work unit; (ii) failed to expressly notify team members that they would be "waiving overtime pay for hours nine and ten" by adopting the proposed AWS; and (iii) were not provided to "non-English-speakers" in their "primary language." Each of these arguments fails. All team members in the affected work unit voted—either by affirmatively registering a "yes" or "no" vote, or being recorded as a "no" vote if they did not return a ballot—and the AWS passed by a two-thirds vote of the entire work unit. The disclosures made clear the consequences of adopting the AWS with respect to overtime pay. And plaintiffs cite to no evidence showing that 5% or more of the affected work unit primarily spoke a language other than English or Spanish. Indeed, they do not even identify what third language that would have been.

2. Plaintiffs argue that absentee ballots are never proper in an AWS election. But the law does not say that, and, if followed, that position would disenfranchise those workers who, because of illness, vacation or other reasons, cannot vote in person in the workplace.

3. Plaintiffs allege that some workers voted in the AWS elections when they should not have. Target does not agree with that contention, but it does not matter—those workers' votes did not affect the outcomes of the elections.

4. Plaintiffs argue that an AWS election may not include a menu of options including two different AWSs. The law and administrative guidance say otherwise.

5. Even though the claim is not included in their complaint, and therefore

> should not be considered on this motion, plaintiffs now allege that after the elections, Target disregarded the AWSs by regularly scheduling team members for non-AWS hours. But plaintiffs make no such showing. At most, plaintiffs show only that Robinson occasionally was assigned hours in addition to his AWS hours, for which he was compensated properly. The law does not prohibit an employer assigning an employee to work hours in addition to his AWS hours.

Unable to substantively challenge Target's 2007 AWS election procedures, plaintiffs argue that the validity of those elections "turn on" Target's prior AWS elections in 1993 and 2001. (ECF 45 at 15.) Yet, plaintiffs rely on *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308 (2018), where the facts are inapposite and, in any event, the court's decision actually supports the opposite conclusion.

Besides Target's AWSs, plaintiffs also fail to raise a triable issue about how Target defines the workday and the workweek. Indeed, plaintiffs effectively abandon their claim about those matters.

Accordingly, because none of their contentions and arguments suffices to raise a triable issue of fact, plaintiffs' overtime claim should be dismissed. And as their overtime claim falls, so do their derivative claims, including their claim under the California Labor Code Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq*. Established case law holds that once a plaintiff loses on allegations of Labor Code violations, his PAGA claim based on those violations fails, as well.

As for plaintiffs' counter-request for summary judgment, that is procedurally improper—plaintiffs have not separately moved for summary judgment, much less met and conferred with Target about summary judgment in their favor as required by Local Rule 7-3. And the Court first would have to give reasonable notice to Target that it was considering granting the request and give Target the opportunity to be heard. Fed. R. Civ. P. 56(f)(1). Even if plaintiffs were successful in defeating Target's motion, that would not mean that they are entitled to summary judgment in their favor. Raising a

triable issue of fact is not the same as establishing that fact as undisputed in the opponent's favor. Because plaintiffs focus on trying to dispute the facts Target has presented, and not on proving all the elements they need to prevail, the proper result here is either (1) Target winning summary judgment or (2) a trial on plaintiffs' claims.

## II. TARGET'S 2007 AWSS WERE VALIDLY ADOPTED

### A. Target's AWS Disclosures Complied with, and in Some Aspects Far Exceeded, What the Law Requires.

Plaintiffs contend that Target's 2007 AWS written disclosures were "unlawful" and contained "intentionally misleading" information.[2] (ECF 45 at 6-7.) Specifically, they allege that the disclosures (i) improperly stated that the proposed AWS would be adopted if two-thirds of those who voted in the election, instead of two-thirds of the work unit, voted in favor of it; (ii) failed to expressly notify team members that they would be "waiving overtime pay for hours nine and ten" by adopting the proposed AWS; and (iii) were not provided to "non-English-speakers" in their "primary language." (*Id.* at 5-7.) Each of these arguments fails.

#### 1. The Disclosures Correctly Recited the Two-Thirds Approval Requirement.

Target's written disclosures accurately recited the proper legal threshold required to adopt an AWS. California law deems an AWS election adopted when "at least two-thirds of affected employees in a readily identifiable work unit" approve. Cal. Lab. Code § 511(a). Consistent with that requirement, Target *voluntarily*[3] disclosed that "two-thirds

---

[2] Plaintiffs go as far as suggesting that Target's disclosures "pressured" team members to vote (ECF 45 at 7 n.9), and even "threatened" them by informing them that, if the proposed AWS did not pass, every team member would "work at least one weekend day" per week. (*id.* at 20). Plaintiffs provide no legal authority or explanation supporting these contentions. Indeed, if the AWS passed, the disclosures stated that those team members assigned to a 3/12 shift would also work weekends. (ECF 40, Exhs.C-1, C-2, C-3.)

[3] California law does not require employers proposing an AWS to define a work unit or disclose the vote percentage needed for passage. Instead, Wage Order 7 simply requires that written disclosures include "the effects of the proposed arrangement on the employees' wages, hours, and benefits." Wage Order 7-2001, § 3(C)(3).

(2/3 or 66%[4]) of team members must vote in favor of the Alternative Workweek Schedule" for it to pass, and defined the "work unit for the upcoming election" as "all team members who *work in*" the applicable worksite, excluding a specific list of positions—not just those who *vote in* the AWS election. (ECF 40, Exhs. C-1, C-2, C-3 (emphasis supplied).) Additionally, as a practical matter, Target reminded team members that "failing to vote would be the equivalent of voting NO," resulting in one vote for every person in the work unit—regardless of whether every person submitted a ballot. (ECF 40-2, Exh. R-2.) That being the case, Target correctly disclosed that, unless two-thirds of the votes were "yes," the AWS would not pass.

**2. The Disclosures Correctly Described the Consequences of Adopting the Proposed AWSs.**

Contrary to plaintiffs' argument, California law does not require employers to expressly state that employees working a validly adopted AWS are waiving statutory overtime. Instead, employers must disclose only "the effects of the proposed arrangement on the employees' wages, hours, and benefits." IWC Wage Order 7-2001, § 3(C)(3).

Here, Target's written disclosures actually exceeded what the law requires. For team members assigned to a 4/10 schedule, for example, the disclosures informed them that they would be paid "one-and-half times [their] regular rate of pay" for "[a]ny work in excess of the regularly-scheduled hours established by the Alternative Workweek Schedule Agreement (on days other than those on which you regularly work a 10-hour shift)." (ECF 40, Exhs. C-1, C-2, C-3.) Indeed, team members already were well aware of their overtime pay under a 4/10 schedule, as that was the schedule they already were working. (ECF 40, ¶ 5.) For team members assigned to a 3/12 schedule, the disclosure

4 There is no legal significance to plaintiffs' suggestion that in the disclosures, Target improperly equated two-thirds with "66%" rather than 66.67%. (*See* ECF 45 at 6 n.8.) In context, the reader reasonably would have understood that two-thirds was required—viewing 66% as merely another (albeit imprecise) way of expressing two-thirds. In any event, as plaintiffs admit (ECF 47 at 30), the elections at T-0553 and T-0555 both passed by a two-thirds majority(77% at T-0553 and 68% at T-0555).

similarly informed them that they would be paid "one-and-half times [their] regular rate of pay" for (1) "[a]ny hours worked between 10 and 12 in the same workday"; and (2) "any work in excess of the regularly scheduled hours established by the Alternative Workweek Schedule Agreement." (ECF 40, Exhs. C-1, C-2, C-3.) Thus, Target adequately disclosed when team members would be entitled to overtime compensation under the proposed AWS.

Plaintiffs' reliance on *Maldonado v. Epsilon Plastics*, a case with extreme facts not present here, does not support their position. As a preliminary matter, in *Maldonado*, the four AWS elections at issue there[5] suffered from a series of egregious missteps, none of which is alleged here:

- In the first election, there was "no written disclosure, no meeting, no voting, no 30-day waiting period, and no report to the state within 30 days." 22 Cal. App. 5th at 1320.
- For the second election, the required "meeting was the same day as the vote, not 14 days before; and the AWS was implemented six days, not 30 days later." 22 Cal. App. 5th at 1320. Documents provided to affected team members asked "for their 'input' on whether they agreed or disagreed with the schedule, but it did not indicate that an employee vote would actually govern whether the 10/2 AWS would be adopted." *Id.* 1333. Several other employees testified that they were "told to vote yes, 'because it was going to happen anyway.'" *Id.*
- For the third election, there was "*no vote* at all or any other attempt to comply with the procedures." 22 Cal. App. 5th at 1320 (emphasis supplied).
- Lastly, for the fourth election, the "AWS had been implemented before the vote." 22 Cal. App. 5th at 1320.

Ignoring the dissimilarities outlined above, plaintiffs argue that *Maldonado* still

[5] There were four separate AWS elections at issue in *Maldonado* because the defendant canceled and readopted the AWS multiple times. 22 Cal. App. 5th at 1316-19.

applies by selectively citing one reference in *Maldonado* to the effect that an AWS fails if an employer does not disclose to employees that they are waiving statutory overtime by adopting the AWS. 22 Cal. App. 5th at 1320. But that passing remark overlooks the myriad of other reasons, outlined above, that the *Maldonado* court relied on for its ultimate holding that the AWS was not validly adopted there. The court did *not* hold that a failure to inform employees that they would be waiving statutory overtime is, by itself, sufficient to invalidate an AWS. *Id.* at 1328 (explaining basis for decision). In any event, unlike the disclosures discussed in *Maldonado*, Target's disclosures, as explained above, *did* describe the hours in which team members would be paid overtime. Put differently, by informing team members that they would be paid overtime for hours eleven and twelve of a 12-hour shift, Target made clear that statutory overtime would not be paid for hours nine and ten. Accordingly, plaintiffs' reliance on *Maldonado* is misplaced.

**3. Target Properly Translated Its Disclosures in Spanish.**

As plaintiffs admit (ECF 47 at 25), there is no dispute that Target properly provided written disclosures to affected team members in both English and Spanish. Plaintiffs nevertheless suggest that Target should have translated the disclosures into a third language (which plaintiffs do not identify), without showing any evidence that 5% or more of the affected work unit primarily spoke that unidentified third language. (ECF 45 at 5.) Plaintiffs instead seem to want to place the burden on Target to show that less than 5% of the affected work unit primarily spoke a third language. But it is *plaintiffs'* burden to prove their claim, not Target's burden to disprove it. "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

Target's disclosures complied with California law.

**B. Absentee Ballots Are Lawful and Necessary to Ensure All Members of the Affected Work Units Have the Opportunity to Vote.**

Plaintiffs contend that Target improperly allowed absentee ballots in the AWS

elections because elections are supposed to occur "during regular working hours at the employees' work site." But California law does not forbid voting by absentee ballot. Indeed, plaintiffs do not (and cannot) point to any language in Labor Code section 511 or Wage Order 7-2001 prohibiting absentee voting. And common sense says that of course absentee ballots are permissible; otherwise, team members who cannot be physically present during the election—*e.g.*, team members who are ill, on a leave of absence, on vacation, *etc*.—would be disenfranchised.

Instead of the applicable law or, for that matter, common sense, plaintiffs rely on an entirely different *and inapplicable* wage order—Wage Order 16-2001—to support their argument. (ECF 45 at 25.) But Wage Order 16-2001's *affirmative mandate* requiring employers to mail absentee ballots does not, by itself, mean that Wage Order 7-2001 prohibits the same practice because it omits the same mandate. To the contrary, it only means that Wage Order 7-2001 neither requires nor forbids absentee voting.

Wage Order 16-2001 has no bearing here because it covers an entirely different workforce—a workforce that often works (and lives) away from home for weeks or months at a time. Occupations governed by Wage Order 16-2001 include construction workers; loggers; and employees working in offshore oil and gas production, drilling, mining, and other similar industries. IWC Wage Order 16-2001, § 1. Thus, unlike retail employees covered by Wage Order 7-2001, who typically live within a traditional commuting distance from their worksite, employees covered by Wage Order 16-2001 are working and living at or near construction sites, oil rigs and logging operations for weeks or months at a time, then going home for weeks or months at a time. Considering that backdrop, Wage Order 16-2001's affirmative requirement to mail absentee ballots to the workforce "who are otherwise eligible [to vote] and who are not on the job site on the day of the election" (DLSE's Enforcement Policies and Interpretations Manual [the "DLSE Manual"], § 56.8.5) makes sense. The rule contemplates that, at any given time, half the workforce is far away from the worksite, but still should be given an opportunity to have a say in their schedule. That same logic should apply here.

### C. The Appropriate Team Members Voted in the AWS Election.

Plaintiffs contend that some team members should not have voted in the AWS election[6], pointing to the following statement in Target's disclosures: "Some team members in Inbound Clerical and Dispatch positions will work a schedule of eight hours per day, five days per week even if the Proposed Alternative Workweek Schedule is adopted." (ECF 45 at 9.) As an initial matter, plaintiffs' argument fails because, even if these team members were excluded from each work unit, the AWSs still passed in each election. At T-0553, the AWS passed by 73%, excluding the 13 Inbound Clerical and Dispatch team members from the work unit (and assuming each voted "yes"). (Supplemental Declaration of Dan Goetzke in Support of Defendant Target Corporation's Motion for Summary Judgment ["Supp. Goetzke Decl."], ¶ 4.) Similarly, at T-0555, the AWS passed by 67.2%, excluding the 16 Inbound Clerical and Dispatch team members from the work unit (and assuming each voted "yes"). (*Id.*, ¶ 5.)

Moreover, the law does not require that *every* employee in a work unit subsequently work the proposed AWS. Section 511 only requires that a proposed AWS must receive approval by "at least two-thirds of affected employees in a readily identifiable work unit." Cal. Lab. Code § 511. A work unit is further defined as a "division, a department, a job classification, a shift, a separate physical location, or a recognized subdivision." *Id.* Thus, those team members in the Inbound Clerical and Dispatch "job classifications" properly voted in the AWS elections, even if some did not subsequently work an 4/10 or 3/12 AWS.

### D. Target's Menu of Schedule Options Complied with California Law.

A menu of work-schedule options is a permissible part of an AWS election. Cal. Lab. Code § 511(a); Wage Order 7-2001 § 3(C)(1). Notwithstanding, plaintiffs argue

---

6 Plaintiffs also argue Target excluded team members in the Logistic Technicians position from the defined work unit, but those team members voted nonetheless. (ECF 45 at 26.) Not so. Target's disclosures expressly excluded Logistic Technicians from the work unit (ECF 40 at 5) and, as a result, these team members did not vote in the AWS elections. (Supp. Goetzke Decl. ¶ 6.)

that Target's 2007 menus of options were unlawful because they required team members to vote "yes" or "no" to both a 4/10 and 3/12 schedule. Yet, neither Labor Code section 511 nor Wage Order 7-2001 prohibits such a menu. On the contrary, the California Industrial Welfare Commission's Statement as to the Basis (the "IWC Statement") expressly acknowledges that an AWS election may include a menu of scheduling options so long as the assignment of employees to a particular schedule is "subject to reasonable nondiscriminatory conditions, such as a senioritybased [*sic*] system or a system based on random selection[,]" that are "approved as part of the two-thirds vote of the work unit." IWC Statement, § 3 (Target's RJN, Exh. A). That is what happened here. Team members submitted Key Preference forms to work either a 4/10 or 3/12 key. (ECF 38 at 9.) Then, Target subsequently assigned keys according to preference—*i.e.*, choice—and their seniority—*i.e.*, a nondiscriminatory condition. (ECF 38 at 10.)

Moreover, Target notified team members of their assigned key *prior* to the election. (ECF 38 at 10.) By the time team members submitted their ballots, they were well aware of the specific AWS—either a 4/10 or 3/12—that they would work if the proposed AWSs were adopted. Thus, as a practical matter, team members were only voting on one proposed AWS shift, to which they were assigned prior to the election, with the opportunity to work a different shift in the future. (*See* Ornelas Depo. at 97:21-99:23, 114:6-115:20 [testifying about a change to his current key because there was an opening, he wanted to move, and Target agreed].)

And, of course, given that team members in the voting work units already were working 4/10 schedules prior to the 2007 elections, there is nothing remarkable or suspect about Target simply adding another option—a 3/12 key.

To support their argument, plaintiffs cite only to a statement in the DLSE Manual giving one example of a menu of options:

> An employer proposes a 4/10 workweek with shifts to cover an around-the-clock operation. Employees would have the right to choose which shift they wish to work, "subject to reasonable nondiscriminatory conditions, such as a

seniority-based system or a system based on random selection…" (Statement As To The Basis).

DLSE Manual, § 56.7.2.3. But giving this as one example is a far cry from a statement that only one kind of an AWS may be listed in the ballot. And the quote reaffirms the guidance in the IWC Statement that different AWS choices may be provided. Indeed, the only prohibition in the DLSE Manual against a choice of schedules is found in section 56.7.2.2., which rules out a menu of options that includes a regular 8-hour day "since that is not an alternative workweek." (*Id.*)

Accordingly, Target's menu of options was permissible, and in all respects the 2007 AWS were validly adopted.

**E. The Propriety of Target's 2007 AWSs Does Not Rely on the 1993 and 2001 Elections.**

Plaintiffs' lengthy discussion of Target's 1993 and 2001 AWS elections (ECF 47 at 13-18) is misguided. That is because the only AWSs at issue here are those that were in place during the relevant time period—March 21 to August 10, 2019—which are the 2007 AWSs. (ECF 45 at 3.)

Plaintiffs argue that an employer cannot hold votes on a new AWS while an existing AWS is in place. (ECF 45 at 15.) There is no authority for that contention, and it makes no sense that an employer would have to rescind an existing AWS, thereby disrupting the work schedules and lives of its employees, as well as its own business operations, only to hold an election on a new AWS and, if it passes, re-institute it, causing further disruption. Plaintiffs cite to paragraph 3(C)(5) of Wage Order 7-2001, which addresses when employees may petition an employer to repeal an AWS, but nowhere in that section or elsewhere in the Wage Order does the IWC say that an employer must repeal an existing AWS before allowing employees to vote on a new one.

Moreover, the Wage Order's requirement that a proposed AWS be adopted "before the performance of work" (IWC Wage Order 7-2001 § 3(C)(2)) is inapplicable here. Specifically, the 4/10 schedules worked during the 2007 elections were adopted in prior

elections, not part of the proposed AWS team members were voting on. This distinction is critical, as Wage Order 7-2001 prevents employers from implementing a proposed AWS prior to employees voting on that schedule. That is not what happened here.

Plaintiffs also cite to *Maldonado v. Epsilon Plastics, Inc.*, but that decision actually supports the opposite conclusion. Although the court in *Maldonado* invalidated subsequent attempts to "reaffirm" an initially invalid AWS, it did so because those subsequent elections "did not meet the requirements of a preadoption vote, preceded by written notice and meetings." 22 Cal. App. 5th at 1328. The court's step-by-step analysis of each election, after the initial invalid election, makes no sense if, as plaintiffs suggest, the subsequent elections "turn on" the validity of a prior election.

Out of an abundance of caution, in its moving papers Target did point to the 2001 adoption of the 4/10 AWS at T-0555 for its alternative argument that, even if plaintiffs successfully challenged the 2007 elections, Robinson still would have no claim because the 4/10 AWS that he worked for the entirety of the relevant period was properly implemented pursuant to the 2001 election. (*See* ECF 38 at 16.) Indeed, Target has shown, and plaintiffs have failed to refute,[7] that the 2001 election procedures complied with Labor Code section 511: (1) written disclosures were provided to team members; (2) informational meetings were held at least 14 days prior to the election; (3) the proposed AWS passed by at least two-thirds of affected team members in a secret ballot election; and (4) Target reported the election results to the DIR within 30 days after the election. (ECF 38 at 13-14.)

## III. PLAINTIFFS MAKE AN UNFOUNDED CONTENTION THAT AFTER ADOPTION, THE 2007 AWSS WERE DISREGARDED

Plaintiffs do not dispute that Target assigned to each team member a specific key

---

[7] Plaintiffs' challenge to the 2001 election is made on the same grounds as their challenge to the 2007 elections: they complaint that (1) some team members voted by absentee ballot; (2) the disclosures did not say that working under a validly adopted AWS waives statutory overtime; and (3) the disclosures were not provided in a "non-English" language. (ECF 45 at 17-18.) These arguments fail for the same reasons explained in section II, *supra*.

outlining the workdays and starting and ending time of their assigned shift. (ECF 47 at 24.) However, plaintiffs contends that team members "more than 'occasionally'" did not work those assigned schedules, thereby rendering the AWSs inoperative. (ECF 45 at 8.)

First of all, because the contention was not made in plaintiffs' complaint (*see* ECF 27), it may not be considered for the first time in opposition to Target's motion. *James v. Dependency Legal Grp.*, 253 F. Supp. 3d 1077, 1092 (S.D. Cal. 2015) ("the Court will not consider any evidence of allegedly discriminatory actions taken against [plaintiff] that were not pled in her complaint when deciding the propriety of [defendant's] summary judgment motion"); *see also Martin v. Rubalcava*, No. 2:12-CV-2232-EFB P, 2014 WL 794342, at *6 (E.D. Cal. Feb. 27, 2014) ("Plaintiff may not, however, add new claims against defendant by way of his opposition to defendant's motion for summary judgment.").

Second, plaintiffs' contention is baseless. As a matter of law, it is permissible to require an employee on an AWS to work additional hours. Indeed, California Labor Code section 511(b) provides that an employee may work hours beyond his AWS so long as he is paid an overtime rate of compensation for any work beyond his regular schedule. The IWC Statement also makes clear that "an employer who requires an employee to work *beyond* the number of hours established by the alternative workweek agreement, *even if such overtime hours are worked on a recurring basis*, does not violate the law if the appropriate overtime compensation is paid." IWC Statement, § 3 (emphasis supplied). Otherwise, if an employer wishes to make other changes to a team member's AWS, the IWC Statement provides that, if "occasional" and the employees are given "reasonable notice" of it, a schedule change "will *not* result in a loss of the overtime exemption." *Id.* (emphasis supplied).

Plaintiffs fail to offer anything to suggest that Target disregarded the AWSs after they were adopted. At most, plaintiffs reference only two discrete examples of Target allegedly *adding* hours to plaintiff Robinson's schedule: (1) one incident in August 2019, where Target scheduled Robinson to work two additional weekend shifts; and

(2) Robinson's vague reference to working additional shifts during Target's "peak season." (ECF 45 at 8.) But these examples do not show that Target disregarded the AWSs. Considering that Robinson has worked for Target in a full-time capacity for over three-and-a-half years (ECF 38 at 6), these few additional shifts do not equate to anything more than "occasional" which, as explained above, is permissible. And Robinson was properly compensated for those extra hours. (ECF 47 at 55) (admitting that Target paid overtime as if it had adopted valid AWSs). As for Robinson's vague reference to working additional shifts during peak season, this is legally insufficient. *See Ludlow v. Corr. Training Facility Med. Dep't*, No. 16-CV-03974-HSG, 2018 WL 4210281, at *6 (N.D. Cal. Sept. 4, 2018) ("[t]o the extent that Plaintiff's allegations are vague and conclusory, such allegations are insufficient to defeat a summary judgment motion.").

For these reasons, there is no dispute of material fact about the lawfulness of Target's AWSs. Plaintiff's overtime claim should be dismissed.

## IV. PLAINTIFFS HAVE ABANDONED THEIR WORKDAY/WORKWEEK THEORY FOR UNPAID OVERTIME

As shown in the moving papers, Target consistently defined the "workday" and "workweek" for team members at T-0553 and T-0555 throughout the relevant period. (See ECF 38 at 17-18.) Moreover, these definitions never affected plaintiffs' overtime pay because Target never divided plaintiffs' scheduled shifts across workdays. (*Id.*)

In opposition, all plaintiffs say is that they "dispute Defendant's description of the definition and lawful nature of its 'workday' and workweek,'" and that "regardless of Defendant's definitions of workday and workweek, it is still liable for damages to Plaintiff for unpaid overtime on their first cause of action. (ECF 45 at 24.) Needless to say, merely "disputing" a cause of action is insufficient to create a genuine issue of material fact. *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."). Accordingly, plaintiffs have abandoned the claim.

///

## V. PLAINTIFFS' DERIVATIVE CLAIMS ALSO SHOULD BE DISMISSED

In the moving papers, Target showed that with the fall of their overtime claim, plaintiffs' derivative claims also fail. (ECF 38 at 22-23.)

Plaintiffs try to salvage their claim under PAGA by arguing that even with dismissal of their overtime claim they retain standing under PAGA. This misstates the law. If summary judgment is granted against a plaintiff on the underlying Labor Code violations, then he or she can no longer proceed under PAGA. *Plaisted v. Dress Barn, Inc.*, No. 2:12-CV-01679-ODW (SHx), 2013 WL 300913 (C.D. Cal. Jan. 25, 2013); *see also Molina v. Dollar Tree Stores, Inc.*, No. CV 12-1428-BRO (FFMx), 2014 WL 2048171, at *14 (C.D. Cal. May 19, 2014).

## VI. PLAINTIFFS' COUNTER-REQUEST FOR SUMMARY JUDGMENT IS PROCEDURALLY IMPROPER, AND IT IS UNFOUNDED BECAUSE PLAINTIFFS HAVE NOT ESTABLISHED THE UNDERLYING FACTS AS UNDISPUTED

Although plaintiffs request that summary judgment be granted in their favor (ECF 45-1), they did not bring a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure, and they did not first meet and confer with Target about the request as required by the Court's Local Rule 7-3. Moreover, in the absence of a motion, the Court properly cannot entertain granting summary judgment against Target without first giving notice and the opportunity to be heard. Fed. R. Civ. P. 56(f)(1).

Even apart from these procedural defects, plaintiffs' attempt to win summary judgment is misplaced because merely raising a triable issue of fact sufficient to defeat the moving party's motion for summary judgment is not the same as establishing undisputed facts supporting summary judgment in favor of the nonmoving party. *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987)("[t]he moving party bears the initial burden to show the absence of a material and triable issue of fact; the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense").

Here, for example, plaintiffs contend that some team members in roles such as

"Logistics Tech," Inbound Clerical," and "Dispatch" improperly voted in the 2007 AWS elections because, plaintiffs speculate, they did not subsequently work an AWS following the election, but instead a regular 8-hour schedule (ECF 45 at 9-10). That speculation is insufficient to defeat Target's motion for summary judgment, but in any event Target has produced evidence showing that those team members did work the AWS following the election. (Supp. Goetzke Decl., ¶ 6.) Summary judgment cannot properly be granted to plaintiffs on that issue. Similarly, plaintiffs contend that Target should have translated written disclosures in a language other than English and Spanish (ECF 45 at 9), but they show no evidence that 5% or more of the affected work unit primarily spoke a third language. (Indeed, they do not even identify the language they have in mind.) That cannot properly be the basis for summary judgment in their favor. And plaintiffs contend that Target disregarded the AWSs following their adoption, but their evidence, which in part is vague and speculative (*see* text at 12, *supra*), shows no more than that Robinson occasionally worked additional hours for which he was properly compensated (*see* text at 13, *supra*).

Accordingly, plaintiffs' request for summary judgment against Target must fail. The outcome of this motion should be either that (1) Target wins summary judgment or (2) there is a trial on plaintiffs' claims.

## VII. CONCLUSION

The undisputed facts show that Target validly adopted and followed the AWSs at the Distribution Centers where plaintiffs worked during the relevant time period. Plaintiffs' challenges to the AWSs are based on unfounded factual assertions and a misreading of the law. They also have abandoned their contentions about how Target defined the workday and workweek. Their overtime claim therefore should be dismissed, and with it their derivative claims, including their PAGA claim. And even if Target's motion is not granted, there is no procedural or substantive basis to grant summary judgment for plaintiffs as they request.

///

Dated: April 6, 2020.

JEFFREY D. WOHL
RYAN D. DERRY
ANNA M. SKAGGS
JEFFREY G. BRIGGS
PAUL HASTINGS LLP

By: *_/s/ Jeffrey D. Wohl_*
Jeffrey D. Wohl
Attorney for Defendant
Target Corporation